**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RONALD MOON** | **CRIMINAL ACTION**<br><br>**NO.    12-502** |

**Baylson, J.**                                                                 **February 6th   , 2014**

<u>**MEMORANDUM RE POST TRIAL MOTION**</u>

The defendant, Ronald Moon, was tried by a jury on one count of bank robbery in violation of 18 U.S.C. § 2113(a), and was found guilty.   In a Motion for New Trial, he makes two contentions.   First, that the Court gave the jury an instruction which was erroneous and prevented him from asserting a defense.   Second, a remark by the prosecutor during his closing argument violated the defendant's right against self-incrimination.

**A.      <u>Facts</u>**

Initially, the Court finds that the evidence of defendant's guilt was very strong.   The bank robbery, in the residential Chestnut Hill section of Philadelphia at 11:00 a.m. on August 20, 2012, was committed by an individual wearing female Muslim garb covering the facial features, who handed a note to a teller demanding money.   The bank teller gave the robber several bundles of cash which were stuffed into a striped bag and the robber then exited the bank.

A private citizen testified at trial, that she was driving near the bank and saw someone who appeared to be a man but was dressed in female Muslim garb, exiting the bank, walking quickly and getting into a maroon vehicle.   She followed the car for a short time and had the opportunity to take a photograph from her cell phone of the car's license plate which she showed to a police officer who had come to the bank after the robbery.   As a result of very prompt police work, the

license plate was traced to the defendant with an address in Abington Township.   Police promptly found the car, which was being driven by a third party, Naijah Glenn, near defendant's home address.   When the police stopped the car, Ms. Glenn got out and was found to have a large amount of cash on her person.   Defendant was a passenger in the vehicle.

The amount of money recovered closely corresponded with the amount that was stolen from the bank.   After given his Miranda rights, defendant made a confession that he robbed the bank.

At trial, defendant's counsel, by use of bank surveillance photos, suggested by cross-examination of various prosecution witnesses, that another unnamed individual who was partially seen on the bank video surveillance films had committed the robbery, perhaps along with Ms. Glenn.

**B.**     **No Error in Court's Charge**

At trial, counsel advised the Court Ms. Glenn had been subpoenaed by both the prosecution and defense.   When the Court learned that she was present outside the Courtroom, the Court held a hearing out of the presence of the jury at which time the Court advised Ms. Glenn of her rights of self-incrimination and she stated that she would assert her rights and would refuse to testify if called.

After a discussion with counsel prior to closing arguments and the charge, the Court determined that fairness to all sides warranted the following charge to the jury that the jury should not "speculate" about Ms. Glenn – simply because her testimony was not available to either side:

> "You may not speculate about [Ms.] Glenn or any other person being
> or involved or not involved in this robbery.   The only issue for you
> to decide is whether the Government has proved Ronald Moon guilty
> beyond a reasonable doubt."

The Court strongly rejects the defense arguments in its post-trial memorandum that the

Court precluded a defense.   The Court did not exclude any evidence whatsoever and did not preclude any defense arguments whatsoever.   The Court allowed the jury to determine whether Ms. Glenn and the other person were involved – but not to "speculate."   The jury could have convicted defendant by concluding defendant and Ms. Glenn or the other person were involved.

The defendant's reliance on *Holmes v. South Carolina*, 547 U.S. 319 (2006) is not any support for the grant of a new trial in this case, because in *Holmes*, the Court actually excluded certain evidence from being admitted.

Defense counsel was well within his rights in trying to argue that another individual, partially seen on the bank video, in fact committed the robbery rather than the defendant, and that Ms. Glenn assisted this other individual by driving the car.   However, Ms. Glenn had not been charged and was not on trial.   The other individual was completely unidentified.   Therefore, the Court's charge was simply to instruct the jury not to "speculate," about Ms. Glenn and that the only issue before the jury was whether the government had proved the defendant guilty beyond a reasonable doubt.

Although counsel and the Court did not find any Third Circuit cases on these facts, there are cases from the Second Circuit that support denial of a motion for new trial.

In *United States v. Daniel*, 399 F.App'x. 690 (2d Cir. 2010), 2010 WL 4454239, Ivanise Daniel, a former United States Post Office window clerk, was convicted of misappropriating Post Office funds.   The defense theory at trial relied in part on the Government's inability to produce any eyewitnesses that actually saw Defendant pocketing Post Office cash.   The District Court charged the jury that they were not to speculate as to the reasons why a particular witness was not called, because it may be for a good and sufficient reason.   Defendant appealed to the Second Circuit, contending that her convictions should be set aside due to these comments to the jury.

3

Because defense counsel did not raise any objection at trial, the Second Circuit reviewed the District Court's comments for clear error. The Second Circuit affirmed Defendant's conviction, holding that the District Court's comments did not diminish the Government's burden or undermine Defendant's defense:

> You know, I told you that inferences are okay, you may. Guesswork and speculation is not okay. Sometimes it's hard to draw a line between the two, but it's very important. And sometimes jurors speculate, why wasn't this witness called? Maybe the witness is dead, for all you know. You know, you have no idea of that, but you can speculate.
>
> Why didn't the government do this? Why didn't the government do that? That's speculation. And I find that, when people speculate out of curiosity, more often than not, they're wrong and then they feel terrible, you know, when they share with me afterwards. I come talk to you and have a chance to ask me any questions you have on your mind, after you finish with your deliberations.
>
> And then I had one situation where somebody said they considered this. And I said that's pure speculation. And I've got news for you, if you speculate, that is wrong, and they felt terrible. So you can use your good common sense. Inferences to be drawn from the actual facts in the case is one thing. But idle speculation is something which is totally, totally wrong, and resist the temptation.
>
> Ask yourself when you're going through your deliberative process, are you speculating about things that are not in evidence, or is this really an inference that you can draw from the facts in evidence? And I think you understand the point that I'm driving home.
>
> The common situation where people speculate is they say, well, why wasn't this person, whose name is mentioned during the trial, called as a witness? You have no idea. It may be good and sufficient reason. The most obvious reason is the person is dead or not available, or who knows what. So that's an example of idle speculation.

Daniel asserted that these instructions contain two clear errors that unduly prejudiced the jury. First, Daniel claims that the District Court's instruction to the jury not to speculate about the absence of witnesses was improper and undercut her defense. The decision whether to give

4

"missing witness" instructions is "generally a matter left to the discretion of the trial judge." *United States v. Caccia,* 122 F.3d 136, 139 (2d Cir.1997). Where, as here, a witness is equally available to both sides, but is not called by either side, the district court has the discretion to "instruct the jury that no unfavorable inference may be drawn against either side." *Id.* Daniel insists that this instruction was inappropriate given the facts of her particular case because her defense was predicated on the fact that the government failed to produce any eyewitness who saw her actually pocketing Postal Service funds. But the District Court's missing witness instruction only told the jury not to speculate as to why certain witnesses were not called; in no way did it diminish the government's burden of proof or undermine Daniel's defense. Indeed, the District Court specifically told the jury that "the burden of proof is always on the government. The defendant's [sic] not required to call any witnesses or offer any evidence because they're presumed to be innocent."

In *United States v. Caccia*, 122 F.3d 136 (2d Cir. 1997), Mr. Caccia, a former employee of the United States Post Office, was convicted of distributing cocaine.   The Government based its case on audio surveillance evidence gathered by a Government informant who engaged in three drug transactions with Defendant.   The issue at trial was whether the Defendant was entrapped by the Government through the actions of its informant. The Government informant was subpoenaed by both parties, but refused to be interviewed by defense counsel prior to trial.   The Government did not call the informant as a witness, and defense counsel also declined to do so, citing their inability to interview the informant prior to trial.   Defense counsel requested a jury charge that would allow the jury to draw an adverse inference against the Government for its failure to call the informant as a witness.   The District Court instead instructed the jury that they could "infer that the testimony of the uncalled witness might have been unfavorable to the Government or to the

defendant or to both." Defense counsel objected, and subsequently appealed to the Second Circuit, which affirmed the conviction, holding that although it was unwise to give the "equal availability" jury charge in this circumstance, it was not an abuse of discretion, because giving or not giving a missing witness instruction is generally at the discretion of the trial judge.

The Court's charge was not reversible error.

**C.**   **No New Trial Required Because of the Prosecutor's Comment in His Rebuttal Statement.**

As to the second point, the prosecutor, near the end of his rebuttal argument, asked the jury a number of rhetorical questions that he felt were responsive to the defense closing argument and then commented that "only one person can answer it, and that's Ronald Moon." See n.t. 48. At this point, defense counsel objected. The Court did not want to interrupt the prosecutor at this point, as his time for the rebuttal closing almost over, and therefore overruled the objection. However, at the opening of the Court's charge, the Court clearly instructed the jury that the prosecutor's remark was improper with the following language:

> Now, in the prosecutor's rebuttal statement at the very end he made a statement that I instruct you to ignore when he said that only Ronald Moon can answer that.
>
> I instruct you to ignore that statement and – because that's inconsistent with what I tell you, that the defendant has no burden or obligation of coming forward with any evidence or answering anything. So you will ignore that statement that Mr. Leverett made."

n.t. 63.

The controlling law in this Circuit does not require a new trial for an improper comment by a prosecutor, unless there is no correction by the Court and unfair prejudice has resulted. One of the leading cases is *United States v. Isaac*, 134 F.3d 199 (3rd Cir. 1998) in which the prosecutor asked a number of rhetorical questions such as happened in this case, and then stated: "The only

people who would know that [Defendant] and others."   The Third Circuit held that, although it

was poor judgment to make such a comment, it was not of such character that the jury would

naturally and necessarily take it to be a comment on the failure of the accused to testify.   There are

also several non-precedential cases which have affirmed the denial of a new trial or refused to

grant a new trial because of closing arguments.   See, *United States v. Sylvester*, 365 Fed. Appx.

379, 381-82 (3d Cir. 2010) (the prosecution's remarks during closing argument stating that no

evidence or testimony was provided to support defendant's theory was not a reference on the

defendant's failure to testify).

 In addition, there are two cases in which allegedly improper comments were made but were

held not to be reversible error because of curative instructions by the Court as in this case.

*United States v. Lynn*, 515 Fed. Appx. 79, 82-83 (3d Cir. 2013), and *U.S. v. Chukwuma,* 454 Fed.

Appx. 56, 60 (3d Cir. 2011) (in a conspiracy trial, the prosecution commented during closing that

the only other person with knowledge of the conspiracy was the defendant.   Defense counsel

objected, the District Court sustained the objection, and then gave a curative instruction to the jury.

On appeal, the Court held that the District Court acted properly and the curative instruction made

any error harmless).

 In *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999), the Court held that if

the prosecution has made an improper comment at trial, a harmless error analysis should be

performed.   The court will look to see whether the error prejudiced the defendant.   To determine

whether there was prejudice, courts look to three factors: (1) the scope of the improper comments

in the overall trial context, (2) the effect of any curative instructions give, and (3) the strength of

the evidence against the defendant.

**D.**     **<u>Conclusion.</u>**

In view of the overwhelming evidence against the defendant, including his confession, the Court **DENIES** the motion for a new trial because of the charge and/or the prosecutor's remark, which the Court instructed the jury must be ignored.

The Court believes that the defendant received a fair trial and that none of the Court's actions were reversible error under established Third Circuit precedent.

An appropriate Order follows.

O:\Janice\ORDERS\12-502.memo.1.15.14.docx